**ORDERED.**

**Dated: July 01, 2026**

Grace E. Robson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| Darryl Culbreth, | ) | Case No. 6:26-bk-00360-GER |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |

### MEMORANDUM DECISION

The Court has entered an order dismissing the case,[1] as well as orders granting Secured Creditors[2] relief from the automatic stay and denying Debtor Darryl Culbreth's ("Debtor") motions seeking to value investment properties and for reconsideration of the Court's order terminating the automatic stay.[3] The Court issues this decision to supplement and further explain its oral ruling.[4]

### BACKGROUND

In September 2006, Debtor executed and delivered a promissory note and mortgage related to real property located at 1615 White Avenue, Orlando, FL 32806 (the "White Property"). Then,

---

[1] *Order Dismissing Case* (Doc. No. 90).
[2] "Secured Creditors" refers to U.S. Bank Trust National Association, not in its Individual Capacity but Solely as Owner Trustee for RCAF Acquisition Trust ("U.S. Bank") and Selene Finance LP, as servicer for U.S. Bank Trust National Association, not in its Individual Capacity but Solely as Owner Trustee for VRMTG Asset Trust ("Selene Finance").
[3] *Order (1) Granting Motion for Relief from Automatic Stay and Prospective In-Rem Relief for Two Years and (2) Denying Motion to Determine Secured Status as Moot* (Doc. No. 86); *Order (1) Granting Motion for Relief from Stay Prospectively Under 11 U.S.C. § 362(d)(4), (2) Denying Motion for Reconsideration as Moot, and (3) Denying Motion to Determine Secured Status as Moot* (Doc. No. 88).
[4] *See Educ. Credit Mgmt. Corp. v. Mosley (In re Mosley)*, 494 F.3d 1320, 1328 (11th Cir. 2007).

in February 2008, Debtor and his wife, Michelle Culbreth ("Michelle"), executed and delivered a promissory note and mortgage related to real property located at 744 Maloney Lane, Orlando, FL 32825 (the "Maloney Property") (the White Property and the Maloney Property are collectively referred to as the "Properties").

### Pre-Foreclosure Bankruptcy Cases

Prior to the relevant foreclosure cases being filed, Debtor and Michelle filed multiple bankruptcies. First, in July 2009, Michelle filed a bankruptcy case,[5] in which she received a standard Chapter 7 discharge. Second, in March 2010, Debtor filed a Chapter 13 bankruptcy case,[6] which was dismissed in July 2011 for Debtor's failure to maintain plan payments.[7] Third, Michelle filed a Chapter 13 bankruptcy case in November 2010,[8] which was dismissed in September 2011 for failure to maintain plan payments.[9] Fourth, in September 2012, Debtor and Michelle filed a Chapter 11 bankruptcy case,[10] which was dismissed with an injunction prohibiting Debtor and Michelle from refiling another bankruptcy petition for a period of two years.[11]

### Post-Foreclosure Bankruptcy Cases

A complaint to foreclose the White Property was filed in June 2016,[12] and a complaint to foreclose the Maloney Property was filed in December 2016.[13] After the filing of these foreclosure

---

[5] *In re Culbreth*, No. 6:09-bk-10004-KSJ (Bankr. M.D. Fla. filed July 14, 2009). The case was initially filed as a Chapter 13 bankruptcy case but was later converted to a case under Chapter 7. *See Order Converting Case from Chapter 13 to Chapter 7*, *In re Culbreth*, No. 6:09-bk-10004-KSJ (Bankr. M.D. Fla. Nov. 13, 2009), Doc. No. 36.

[6] *In re Culbreth*, No. 6:10-bk-05234-KSJ (Bankr. M.D. Fla. filed Mar. 31, 2010).

[7] *See Order Granting Trustee's Motion to Dismiss for Failure to Maintain Plan Payments*, *In re Culbreth*, No. 6:10-bk-05234-KSJ (Bankr. M.D. Fla. July 14, 2011), Doc. No. 99.

[8] *In re Culbreth*, No. 6:10-bk-21211-KSJ (Bankr. M.D. Fla. filed Nov. 29, 2010).

[9] *See Order Granting Trustee's Motion to Dismiss for Failure to Maintain Plan Payments*, No. 6:10-bk-21211-KSJ (Bankr. M.D. Fla. Sep. 13, 2011), Doc. No. 47.

[10] *In re Culbreth*, No. 6:12-bk-13245-KSJ (Bankr. M.D. Fla. filed Sep. 27, 2012).

[11] *See Order Dismissing Case with Two (2) Year Injunction Against Debtors Filing Further Bankruptcy Cases*, *In re Culbreth*, No. 6:12-bk-13245-KSJ (Bankr. M.D. Fla. Mar. 27, 2013), Doc. No. 100.

[12] *Nationstar Mortg. LLC v. Culbreth*, No. 2016-CA-004752-O (Fla. 9th Cir. Ct. filed June 1, 2016).

[13] *U.S. Bank Tr. Nat'l Ass'n v. Culbreth*, No. 2016-CA-011209-O (Fla. 9th Cir. Ct. filed Dec. 23, 2016). U.S. Bank was substituted as the proper plaintiff on March 13, 2024. *See Order Granting Motion to Substitute Party Plaintiff and Order Denying Defendant's Ore Tenus Motion*, *U.S. Bank Tr. Nat'l Ass'n v. Culbreth*, No. 2016-CA-011209-O (Fla. 9th Cir. Ct. Mar. 13, 2024).

proceedings, several bankruptcy cases were filed by Debtor and Michelle that were ultimately dismissed. First, Michelle filed a Chapter 13 bankruptcy case in January 2017,[14] which was dismissed for failure to file information in February 2017.[15] Second, Michelle filed a Chapter 13 bankruptcy case in June 2017,[16] which was dismissed in February 2018 before a plan could be confirmed.[17]

In January 2018, the initial foreclosure case as to the White Property was voluntarily dismissed.[18] Following this dismissal, Debtor and Michelle filed a Chapter 13 bankruptcy case in April 2018 (the "2018 Case").[19] In the 2018 Case, Debtor and Michelle provided for the surrender of the Properties in their amended plan.[20] That amended plan was confirmed in January 2019.[21] Less than nine months after the amended plan was confirmed, Debtor and Michelle voluntarily dismissed the 2018 Case.[22]

A second foreclosure case as to the White Property was commenced in January 2020.[23] Then, in April 2024, a consent final judgment was entered in the foreclosure case related to the Maloney Property that scheduled a foreclosure sale for July 11, 2024.[24] Debtor filed another

---

[14] *In re Culbreth*, No. 6:17-bk-00006-KSJ (Bankr. M.D. Fla. filed Jan. 3, 2017).
[15] *See Order Dismissing Case, In re Culbreth*, No. 6:17-bk-00006-KSJ (Bankr. M.D. Fla. Feb. 23, 2017), Doc. No. 13.
[16] *In re Culbreth*, No. 6:17-bk-03736-KSJ (Bankr. M.D. Fla. filed June 6, 2017).
[17] *See Order Dismissing Case and Denying Pending Motions, In re Culbreth*, No. 6:17-bk-03736-KSJ (Bankr. M.D. Fla. Feb. 21, 2018), Doc. No. 49.
[18] *See Order on Voluntary Dismissal, Nationstar Mortg. LLC v. Culbreth*, No. 2016-CA-004752-O (Fla. 9th Cir. Ct. Jan. 22, 2018).
[19] *In re Culbreth*, No. 6:18-bk-01917-KSJ (Bankr. M.D. Fla. filed Apr. 4, 2018).
[20] *See Amended Chapter 13 Plan, In re Culbreth*, No. 6:18-bk-01917-KSJ (Bankr. M.D. Fla. Nov. 14, 2018), Doc. No. 97.
[21] *See Order Confirming Plan, In re Culbreth*, No. 6:18-bk-01917-KSJ (Bankr. M.D. Fla. Jan. 16, 2019), Doc. No. 114.
[22] *See Order Dismissing Case, In re Culbreth*, No. 6:18-bk-01917-KSJ (Bankr. M.D. Fla. Oct. 2, 2019), Doc. No. 132; *Order Granting Debtors' Motion to Amend Order Dismissing Case, In re Culbreth*, No. 6:18-bk-01917-KSJ (Bankr. M.D. Fla. Oct. 3, 2019), Doc. No. 137.
[23] *US Bank Tr. Nat'l Ass'n v. Culbreth*, No. 2020-CA-000935-O (Fla. 9th Cir. Ct. filed Jan. 27, 2020).
[24] *Consent Final Judgment, U.S. Bank Tr. Nat'l Ass'n v. Culbreth*, No. 2016-CA-011209-O (Fla. 9th Cir. Ct. Apr. 9, 2024).

Chapter 13 bankruptcy case (the "2024 Case")[25] on the eve of the sale, which stopped the sale. In the 2024 Case, Debtor obtained an agreed order determining that the value of U.S. Bank's secured claim as to the Maloney Property was $333,000.[26] Additionally, an agreed order was entered determining that the value of Selene Finance's secured claim as to the White Property was $342,000.[27] Less than one year after it was filed, the 2024 Case was dismissed for Debtor's failure to maintain timely plan payments.[28]

Later, in December 2025, almost six years after the foreclosure case was filed, a final judgment was entered scheduling a foreclosure sale of the White Property on January 26, 2026.[29] In addition, a foreclosure sale of the Maloney Property was rescheduled for January 21, 2026.[30] The day before the January 21 foreclosure sale of the Maloney Property, Debtor filed the current Chapter 11 bankruptcy case,[31] which canceled both foreclosure sales. Secured Creditors filed the Motions for Relief from Stay in this case.[32] Secured Creditors requested prospective relief from the automatic stay to be able to proceed against the Properties *in rem* in the event of any future bankruptcy filing. Their argument was prospective *in rem* relief was appropriate under § 362(d)(4)

---

[25] *In re Culbreth*, No. 6:24-bk-03503-GER (Bankr. M.D. Fla. filed July 10, 2024).

[26] *See Order Granting Debtor's Motion to Determine Secured Status of Claim Held by US Bank National Association as Trustee of RCAF Acquisition Trust*, *In re Culbreth*, No. 6:24-bk-03503-GER (Bankr. M.D. Fla. Dec. 31, 2024), Doc. No. 37.

[27] *See Agreed Order Granting Debtor's Motion to Determine Secured Status of Claim Held by US Bank National Association as Trustee of VRMTG Asset Trust*, *In re Culbreth*, No. 6:24-bk-03503-GER (Bankr. M.D. Fla. Feb. 18, 2025), Doc. No. 52.

[28] *See Order Granting Motion to Dismiss for Failure to Maintain Timely Plan Payments*, *In re Culbreth*, No. 6:24-bk-03503-GER (Bankr. M.D. Fla. Apr. 14, 2025), Doc. No. 66.

[29] *Final Judgment of Foreclosure and Reestablishment of Lost Promissory Note*, *US Bank Tr. Nat'l Ass'n v. Culbreth*, No. 2020-CA-000935-O (Fla. 9th Cir. Ct. Dec. 12, 2025).

[30] *Order Granting Plaintiff's Motion to Reschedule Foreclosure Sale*, *U.S. Bank Tr. Nat'l Ass'n v. Culbreth*, No. 2016-CA-011209-O (Fla. 9th Cir. Ct. Nov. 18, 2025).

[31] *See* Doc. No. 1.

[32] *Motion for Relief from Stay to Enforce Consent Final Judgment* (Doc. No. 26); *Motion for Relief from Automatic Stay* (Doc. No. 36); *Secured Creditor US Bank National Association's Supplemental Motion for Relief from Stay* (the "Supplemental Motion for Relief from Stay") (Doc. No. 59) (collectively, the "Motions for Relief from Stay").

of the Bankruptcy Code[33] because Debtor's serial filings constitute a scheme to delay, hinder, or defraud creditors.[34]

Meanwhile, Debtor sought to stay Secured Creditors' actions and value the Properties as part of this case. In his Motions to Determine Secured Status,[35] Debtor asserted the fair market value of the Maloney Property was $281,100 and the fair market value of the White Property was $260,000. Debtor's request to extend the automatic stay was based on alleged increased income that could fund a plan.[36] The Court granted the request to extend the automatic stay on an interim basis, conditioned on payment of adequate protection to the Secured Creditors.[37] U.S. Bank filed an *Affidavit of Default*[38] and the Court terminated the automatic stay as to the Maloney Property.[39] Debtor asked the Court to reconsider termination of the automatic stay, arguing he made the payment, but it was returned as undeliverable because he was provided the wrong payment address.[40]

## DISCUSSION

The automatic stay is intended to give honest debtors a hiatus from creditors' collection efforts. The protection afforded by the automatic stay is not intended to reward debtors who abuse the bankruptcy system by filing cases repeatedly to prevent or delay creditors from collecting on legitimate claims.[41]

---

[33] Unless otherwise specified, all section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.
[34] *See* Supplemental Motion for Relief from Stay at 4-5.
[35] *Motion to Determine Secured Status of Claim Held by US Bank National Association as Trustee of RCAF Acquisition Trust* (Doc. No. 28); *Motion to Determine Secured Status of Claim Held by US Bank National Association as Trustee of VRMTG Asset Trust* (Doc. No. 29) (collectively, the "Motions to Determine Secured Status").
[36] *Debtor's Verified Amended Motion to Extend Automatic Stay* (Doc. No. 27).
[37] *See Order (1) Conditionally Granting Motion to Extend the Automatic Stay on an Interim Basis, (2) Setting Further Hearing, and (3) Setting Deadline for Debtor to Supplement Responses to Stay Relief Motions* (Doc. No. 62).
[38] Doc. No. 74.
[39] *Order Terminating the Automatic Stay* (the "Order Terminating Stay") (Doc. No. 75).
[40] *See Motion for Reconsideration* (the "Reconsideration Motion") (Doc. No. 80).
[41] *In re Zalloum*, No. 6:17-bk-02329-KSJ, 2019 WL 548545, at *9 (Bankr. M.D. Fla. Feb. 11, 2019) ("The automatic stay is imposed to give honest debtors a hiatus from constant creditor collection actions. The stay is not intended to

Section 362(d)(4)(B) provides:

(d) On request of a party in interest and after notice and a hearing, ***the court shall*** grant relief from the [automatic] stay . . . such as by terminating, annulling, modifying, or conditioning such stay—

. . .

(4) with respect to a stay of an act against real property . . . by a creditor whose claim is secured by an interest in such real property, ***if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved*** . . .

. . .

(B) ***multiple bankruptcy filings affecting such real property***.[42]

"[T]he *in rem* remedy is specifically tailored to the problem of abusive use of the stay, provides certainty for the creditor, and does not unfairly affect the positions of other parties in interest."[43] Pursuant to § 362(d)(4), the Court *must* grant relief from the stay that will be binding in any other bankruptcy case for a period of two years if it finds Debtor filed the petition as part of a scheme to delay, hinder, or defraud the Secured Creditors involving multiple bankruptcy filings affecting the Properties.

"Courts have 'consistently recognized that repeated bankruptcy filings made on the eve of successive foreclosure attempts constitute strong evidence of an intent to delay and hinder secured creditors from collection.'"[44] With that said, "[w]hile the existence of multiple voluntary bankruptcy filings commenced on the eve of state court foreclosure or eviction hearings may

---

reward abusive debtors by continually keeping creditors from collecting legitimate claims." (footnote omitted) (citing *31 Tozer Road, LLC v. Greenberg (In re 31 Tozer Rd., LLC)*, No. 17-cv-10013-IT, 2018 WL 340028, at *2 (D. Mass. Jan. 9, 2018))).

[42] 11 U.S.C. § 362(d)(4)(B) (emphasis added).

[43] *Aurora Loan Servs., Inc. v. Amey (In re Amey)*, 314 B.R. 864, 869 (Bankr. N.D. Ga. 2004).

[44] *In re McKenzie*, No. 25-12294 (JPM), 2026 WL 927546, at *5 (Bankr. S.D.N.Y. Apr. 6, 2026) (first quoting *In re Wallace*, 676 B.R. 298, 308 (Bankr. S.D.N.Y. 2026); and then citing *In re Blair*, Nos. 09-76150-ast, 09-77562 ast, 2009 WL 5203738, at *4 (Bankr. E.D.N.Y. Dec. 21, 2009)).

establish a *prima facie* case that a 'scheme to delay, hinder, or defraud creditors' exists, this is necessarily a fact-sensitive inquiry that requires the Court to weigh the evidence presented."[45]

After considering  the parties' arguments and weighing the evidence, the Court finds that the numerous bankruptcy cases commenced by Debtor and Michelle, at least five of which led to the delay of foreclosure cases and foreclosure sales, constitute an abuse of the bankruptcy system and were part of a scheme to hinder or delay Secured Creditors' efforts to enforce their legitimate rights.[46] To further explain this finding, the Court will address the parties' arguments in turn.

### Prior Surrender in 2018 Case

U.S. Bank asserts that Debtor is bound by his surrender of the Maloney Property in the 2018 Case because the Court confirmed that plan.[47] Debtor takes the correct position that he is not bound by the prior confirmed plan. In a Chapter 13 case, upon dismissal, parties are no longer bound by the terms of the previously confirmed plan.[48] While Debtor's surrender of both the Maloney Property and the White Property in the 2018 Case is not binding in this case, the Court considers the surrender as circumstantial evidence that Debtor is not proceeding in this case in good faith as to the Secured Creditors.

### Valuation of the Properties

In the 2024 Case, agreed orders were entered valuing the Maloney Property at $333,000 and the White Property at $342,000.[49] Despite having recently agreed to these valuations, Debtor

---

[45] *In re Skubinski*, 677 B.R. 387, 394-95 (Bankr. M.D. Fla. 2026) (footnote omitted) (citing *In re Jackson*, 672 B.R. 693, 712 (Bankr. E.D. Mich. 2025)).

[46] *See Baker v. Bank of Am., N.A.*, 837 F. App'x 754, 763-64 (11th Cir. 2020) (finding the bankruptcy court did not abuse its discretion in awarding creditor *nunc pro tunc* and prospective relief from the automatic stay under § 362(d)(4), when creditor, despite the debtor's eve-of-sale Chapter 13 filing, her fifth case, had proceeded with planned foreclosure sale of the debtor's home). In the Eleventh Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

[47] *See* Supplemental Motion for Relief from Stay at 3-4.

[48] *See, e.g.*, *In re Mayo*, No. 21-10156-BPC, 2021 WL 4483419, at *2-3 (Bankr. M.D. Ala. Sep. 30, 2021).

[49] *See supra* notes 26, 27.

requests that the Court re-value these properties as part of this case for lesser amounts, with the Maloney Property at $281,100 and the White Property at $260,000.

The Court finds that filing this case shortly after the dismissal of the 2024 Case and requesting to value the Properties at an amount much lower than agreed to in the 2024 Case demonstrates Debtor's lack of good faith in dealing with the Secured Creditors. This finding is further supported by Debtor's arguments that the Properties were not diminishing in value and that he made improvements to the Properties.[50]

### *Adequate Protection Payments*

Debtor argued that the Court's ability to grant prospective relief under § 362(d)(4) is negated because he will be making adequate protection payments and has a viable plan. At the March Hearing, Debtor represented he had funds available to make adequate protection payments to the Secured Creditors, and the Court required him to make such payments as a condition of extending the automatic stay. However, Debtor failed to make the payment to U.S. Bank and the Court terminated the stay based on his default.[51] Debtor argued that he attempted to make the payment, but the payment was returned as undeliverable because he was provided the wrong address. However, Debtor failed to attach any evidence[52] that the payment was actually returned undelivered and the payment address was readily accessible by review of U.S. Bank's Proof of Claim No. 7 that was filed with the Court.

Even if the Court were to take all of Debtor's facts as stated in the Reconsideration Motion as true, it would not change the Court's ruling that prospective stay relief is warranted given Debtor's history of using the bankruptcy process to hinder and delay the Secured Creditors' *in rem*

---

[50] Debtor made these arguments at a hearing conducted on March 12, 2026 (the "March Hearing") when opposing Secured Creditors' requests to terminate the automatic stay.

[51] *See* Order Terminating Stay.

[52] While Debtor submitted the *Declaration in Support of Reconsideration* ¶ 6 (Doc. No. 80-1), there was no corroborating evidence.

rights. Therefore, the Court finds it appropriate to have denied the Reconsideration Motion as moot.

### *Viability of Plan of Reorganization*

Debtor argued his plan would outline how the income from rents and other sources would be sufficient to pay the Secured Creditors in full based on the value of the Properties. However, Debtor's Plan[53] provides conflicting valuations as to Selene Finance's claim. Specifically, Article II of the Plan states that the amount of Selene Finance's claim is $435,000,[54] but Article V states the amount of the claim is $281,000.[55] Further, the Plan proposes to make monthly payments over a period of 180 months based on Debtor's valuations of the Properties.[56] This proposed treatment is inconsistent with Debtor's prior assertion that he would pay the Secured Creditors in full over the life of the three-year Plan and demonstrates the Plan was not proposed in good faith (*see supra* regarding Debtor's downward valuation). The Court therefore agrees with Selene Finance's argument that the treatment of its claim is vague and speculative.[57]

In addition, the Plan proposes to pay the claim of creditor Tony Singletary over a 60-month period.[58] However, this claim is secured not by Debtor's assets but by the assets of 10 Ocean Breeze LLC, a company owned by Debtor. Debtor provides no explanation for why it is acceptable for this proposed treatment to be included as part of Debtor's Plan, nor why it would be appropriate to pay this claim over a 60-month period while the claims of the Secured Creditors are to be paid over a 180-month period.[59]

---

[53] *Plan of Reorganization Proposed by Darryl Culbreth* (the "Plan") (Doc. No. 57).
[54] Plan at 9.
[55] Plan at 11.
[56] *See* Plan at 11-12.
[57] *See Objection to Confirmation of Debtor's Plan of Reorganization Proposed by Darryl Culbreth (Doc. No. 57)* (Doc. No. 78).
[58] Plan at 12.
[59] Because the Court finds that the Plan is not viable, the Court need not address Debtor's argument as to whether the Properties are necessary for an effective reorganization.

**CONCLUSION**

Other than Michelle's 2009 case, through which she received a Chapter 7 discharge, all of Debtor's and Michelle's prior cases have been dismissed. Many of these bankruptcy cases resulted in delays to the Secured Creditors' foreclosure proceedings. The long history of Debtor's unsuccessful bankruptcy cases affecting the Secured Creditors' ability to enforce their *in rem* rights lends substantial support to the Court's conclusion that Debtor is using the bankruptcy system to hinder and/or delay the Secured Creditors' efforts to pursue their rights. Accordingly, based on the record and the totality of the circumstances as a whole, the Court finds that it was appropriate to grant prospective relief to the Secured Creditors and to deny the Motions to Determine Secured Status and the Reconsideration Motion as moot based upon the granting of prospective stay relief.

# # #

The Clerk's Office is directed to serve a copy of this Order on all interested parties.